**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LOUISE SCRUTCHINS,                                :

    Plaintiff,                              :           Civil Action No.  05-925 (CRS)

                                            :

    ·v                                      :           **OPINION**

                                            :

DIVISION OF YOUTH AND FAMILY                      :
SERVICES, RUTH STAGG, ROBERT                      :
SABREEN, JOHN DOES (1-10), JANE                   :
DOES (1-10), ABC. CORP. (1-10),                   :
INDIVIDUALLY, JOINTLY AND
SEVERALLY,

    Defendants.                             :

**CHESLER, U.S.D.J.**

    This matter comes before the Court on Defendants' motion for summary judgment
(docket # 33) pursuant to FED. R. CIV. P. 56.   Defendants filed an earlier motion for summary
judgment (docket # 28) but withdrew it (docket # 31) prior to the time Plaintiff's opposition was
due.  For the reasons set forth below, Defendants' motion for summary judgment will be granted
in part and denied in part.

### PROCEDURAL BACKGROUND

    Plaintiff Louise Scrutchins is an African-American woman who began her employment at
the Division of Youth and Family Services ("DYFS") in 1988. At all times relevant to this
lawsuit, Plaintiff has been a New Jersey resident.  All three Defendants are also residents of New

Jersey.  In December 2004, Plaintiff filed a petition in the Superior Court of New Jersey (Law Division) for Essex County.  Defendants removed this case to the United States District Court for the District of New Jersey in February 2005 (docket #1).  Defendants based their removal on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(b) because Plaintiff pled claims arising under 42 U.S.C. §§ 1983 and 1985(3).  No other basis of federal jurisdiction exists.

In May 2005, Defendants filed a motion to dismiss certain of Plaintiff's claims not relevant to the motion currently pending before this Court (docket #6).  During the same month, Plaintiff sought leave to file an Amended Complaint (docket #7).  In December 2005, Judge Greenaway of the United States District Court for the District of New Jersey issued an Opinion and Order dismissing certain of Plaintiff's claims not relevant to the instant matter and granting Plaintiff's motion for leave to amend her Complaint (docket #12).  The Second Amended Complaint was filed and answered in January 2006 (docket #15 and #16).  Thereafter, the parties engaged in discovery and Defendants' motion for summary judgment was filed in November 2007 (docket #33 and #34).  Defendants' motion for summary judgment is now fully briefed and ripe for decision.

## FACTUAL BACKGROUND

The Court finds that following facts are uncontroverted.  Plaintiff Louise Scrutchins is an African American woman who began employment at the Division of Youth and Family Services ("DYFS") in Newark, New Jersey in 1988.  She holds a Masters Degree in Social Work. Plaintiff worked as a Family Service Specialist III ("FSS III") doing case work, which means that she was

2

responsible for monitoring cases, scheduling monthly visits to see clients, preparing court reports, scheduling conferences with her supervisors, and transporting children for office visits. DYFS terminated Plaintiff's employment in 1994 but Plaintiff was reinstated approximately one year and five months later, after filing a grievance with her union.  In or about 2001, Plaintiff's job title changed to Family Service Specialist II due to a statewide upgrade.  Generally, the FSS I position is senior to, or constitutes a promotion from, the FSS II position and FSS II is senior to, or constitutes a promotion from, the FSS III position.

Plaintiff's mother became ill after suffering a stroke and Plaintiff became her mother's primary care giver.  In January 2001, after her mother's first stroke, Plaintiff submitted a memorandum to her supervisor stating that she would no longer be able to work after 5:00 p.m. on Wednesdays and possibly other days as well.  In response, Defendant Stagg, to whom the supervisor reported, sent Plaintiff a memorandum reminding Plaintiff that she worked in a "non-limited" position (which means that her job duties involved irregular or variable work hours and might require her to work past 5:00 p.m.) and directing Plaintiff to submit a written explanation why she needed to leave at 5:00 p.m. on Wednesdays, the duration of the request, and to provide supporting documentation.  In response, Plaintiff submitted a memorandum to Defendant Stagg's supervisor in which she objected to Defendant Stagg's "insensitive memo" and alleged that Defendant Stagg exhibited behavior that was racist, hostile, and Nazi-like.  Several days later, Plaintiff sent Defendant Stagg another memorandum advising that she needed to leave at 5:00 p.m. everyday and before 5:00 on days when her mother had appointments with the kidney specialist.

In April 2001, Plaintiff filed an internal discrimination complaint with the New Jersey

Department of Human Services ("DHS").  That complaint prompted an investigation and concluded with a finding that Plaintiff's complaint was unfounded.  Eventually, in June 2001, Defendant Stagg sent Plaintiff a memorandum granting Plaintiff until July 20, 2001 to leave at 5:00 p.m. everyday.  The memorandum indicated that the thirty day window was to give Plaintiff time to "make arrangements for the care needed by [her] family" but that Plaintiff would need to be available to work past 5:00 p.m. thereafter "if necessary to cover office operations."

Plaintiff filed a complaint in New Jersey state court in December 2004 and Defendants removed the case to federal court in February 2005.  In May 2005, Plaintiff sought leave to file an Amended Complaint, which was granted.  In December 2005, the Court issued an Opinion and a separate Order permitting Plaintiff to amend her complaint and granting Defendants' motion to dismiss in part (docket #12 and #13).  Plaintiff's claims under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq., and 42 U.S.C. §§ 1985(3) and 1983 survived the motion to dismiss with respect to ten specific promotional opportunities Plaintiff claimed she was wrongfully denied.

In January 2006, Plaintiff filed an Amended Complaint, followed by a Second Amended Complaint before Defendants answered.  The Second Amended Complaint alleges that Plaintiff was "routinely denied promotional opportunities and subjected to ... disciplinary actions when she sought time to care for her gravely ill mother."  (Second Amended Complaint at ¶ 23.) Specifically, Plaintiff claims she was "entirely overlooked and rejected" for the following positions based upon her race and/or in retaliation for her discrimination complaints.[1]

---

[1]The Court notes that Plaintiff's Second Amended Complaint also contains some references to alleged gender discrimination and that Plaintiff alluded to gender discrimination in her response brief.  In light of Plaintiff's deposition testimony in which she stated that she is not

a)      On February 15, 2005, DYFS denied plaintiff the position
        of Program Support Specialist

b)      On January 21, 2005, DYFS denied plaintiff the position of
        Supervising Family Service Specialist

c)      On January 24, 2005, DYFS denied plaintiff the position of
        Supervising Family Specialist and Resource Family
        Support Specialist

d)      On April 14, 2005, DYFS denied plaintiff the FSS I
        position

e)      On March 29, 2005, DYFS denied plaintiff [a Program
        Development Specialist] 1 position

f)      On March 30, 2005, DYFS denied plaintiff [a] Supervising
        Family Service Specialist II [position]

g)      In May 2004, plaintiff applied for the position of Family
        Service Specialist I and defendants denied the position

h)      In January 2004, plaintiff applied for the position of
        Administrative Analyst 2 and defendants denied the
        position

I)      In January 2004, plaintiff applied for the position of
        Program Support Specialist (AP) and defendants denied her
        the position

j)      In October 2003, plaintiff had applied for the position of
        Administrative Analyst I. . .and defendants denied her the
        position

k)      In September 2003, plaintiff applied for the position of
        Program Support Specialist I in the Training and Staff
        Development Unit and defendants denied her the position

l)      In June 2003, plaintiff had applied for the position of

---

claiming she was discriminated against based on her gender and the fact that gender
discrimination was not fully briefed by either of the parties, the Court considers any gender
discrimination claims waived.  (Plaintiff's Depo., Vol. II, at 109:12-110:23; 118:9-14.)

Program Support Specialist I and defendants denied her the position

m)      In February 2003, plaintiff had applied for the position of County Service Specialist and defendants denied her the position.

(Second Amended Complaint at ¶ 24.)  It is uncontroverted that Plaintiff was notified (or the job posting disclosed) that Plaintiff did not meet the minimum qualifications for the following positions: County Service Specialist (m), which required "four years of experience in the development, analysis, or review of social service programs and/or the delivery structure of such programs" (Morgan Affidavit, Ex. S);[2] Program Support Specialist I (a), (I), (k) and (l), which required three years of particularized experience that Plaintiff does not have and allowed a Masters Degree in Social Work to substitute for only one of those three years (Morgan Affidavit, Ex. T);[3] Administrative Analyst 2 (h), requiring three years of experience relating to budgets, data processing, and/or other operational and administrative matters (Morgan Affidavit, Ex. V );[4] and Program Development Specialist I (e) (Morgan Affidavit, Ex. Y).[5]

---

[2]Plaintiff's experience was exclusively as a caseworker.  (Plaintiff's Depo., Vol. I, at 14:1 - 15:6.)

[3]Id.

[4]Although Plaintiff initially testified that the qualifications for this position were "suitable" to her qualifications, she admitted that she did not know what the qualifications were. (Plaintiff's Depo., Vol. II, at 85:5 - 86:25.)

[5]In her response brief, Plaintiff attempted to controvert the evidence that she was unqualified for these positions by denying the accuracy of Defendants' factual statements, sometimes without citing any authority, sometimes by including additional facts not material to the statement at issue, and other times by denying sufficient information to either admit or deny. (See generally Plaintiff's response to SOF's 44-49, 51-59, and 61.)  Such attempted controversion is not effective.

6

Apparently, Plaintiff met the minimum qualifications for the positions identified above as

(b), (c), (d), (f), (g), and (j).  Defendants' characterization of Morgan Affidavit Exhibit X as

correspondence advising Plaintiff she did not meet the minimum requirements for the position of

Supervising Family Specialist (c) is not accurate.  The letter does not tell Plaintiff that she is

unqualified for the job; it merely states that a resume review was conducted due to the large

number of applicants and only those whose qualifications "most closely match[ed] the functions

of this position" were selected to be interviewed.  Similarly, Morgan Affidavit Exhibits U and W

do not advise Plaintiff that she is unqualified for the Program Support Specialist position; they

merely advise that only candidates who "met and exceeded" qualifications or were "best

qualified" would be interviewed.  However, the qualifications for the Program Support Specialist

position outlined in Morgan Affidavit Exhibit T and Plaintiff's own deposition testimony (both

cited above) demonstrate that it is undisputed that she was not qualified for that position.

Because this Court finds that Plaintiff met the minimum qualifications for positions (b), (c), (d),

(f), (g), and (j), attention will now be turned to the parties' contentions regarding Plaintiff's

discrimination and retaliation claims.

With respect to her claims that Defendants discriminated against her on the basis of race

and/or in retaliation for filing discrimination complaints, Plaintiff alleges the following: (1)

Defendants did not allow her to leave work at 5:00 p.m. to care for her mother but another

employee, Evelyn Velazquez, was permitted to leave at 5:00 because of her son's day care

needs; (2) Defendants could have promoted or transferred Plaintiff into a position allowing her to

leave at 5:00 p.m. but elected not to do so because of Plaintiff's race or in retaliation for filing

discrimination complaints and despite her fifteen years of experience, Masters Degree, and

number one ranking on a standardized DYFS test; (3) Plaintiff was treated differently than other

African Americans in retaliation for filing discrimination complaints; (4) Plaintiff was never

promoted despite her seniority and credentials; and (5) it was DYFS policy to give priority

consideration to employees who requested transfer or reassignment due to "extreme personal

hardship" (if positions were available that the employee was capable of performing) but Plaintiff

was denied consideration based upon her race or in retaliation for filing discrimination

complaints.

With respect to her retaliation claim, Plaintiff also points to the deposition of Defendant

Stagg, who testified in her deposition as follows:

> [O]ne of the issues that people should be aware of is an office
> manager is required to select people that she felt. . .she could work
> with and would have an open communication and a problem-
> solving attitude, that I would not be likely to want to promote
> people who circumvent me, didn't tell me what was going on and
> would seek to go outside the office in order to make me look bad
> or make me look like I was making poor decisions.  That that
> would certainly be something I considered.  You know, how I got
> along and whether we could work together.  That particular
> conversation was extracted [sic] to people.  Someone said that I
> said I would retaliate if they didn't come to me.

(Stagg Depo. at 98:14-99:3.)  Defendant Stagg retired from DYFS in December 2003 and it is

uncontroverted that she would not have been involved in any promotion decisions after that time.

Plaintiff's other allegations against individual Defendants Stagg and Sabreen are, in

essence, that they were involved in the decision making process for the positions Plaintiff applied

for but consistently denied her the promotions or transfers she sought.  She further alleges that

Defendant Sabreen consistently elected to discipline her, rather than accommodating her (as was

done with another employee) and that he once told Plaintiff, "We got you now."

Defendants assert that Plaintiff failed to produce any evidence of discrimination or retaliation.  They submit evidence demonstrating that African American women and men were hired for the majority of positions for which Plaintiff was qualified but did not get selected.  (See Affidavit of Linda Dobron.)  Likewise, Defendants state that all of the positions Plaintiff requested transfers or promotions to (except for the County Service Specialist and Program Support Specialist) were non-limited positions, meaning that Plaintiff could be required to work after 5:00 p.m.  Plaintiff counters that, while the positions may technically be designated as non-limited positions, as a practical matter, no after-hours work is required due to the nature of the responsibilities involved (for example, the Court Liaison position, while characterized as non-limited, apparently does not require field work or work after the regular hours of the court).

## PRELIMINARY LEGAL ANALYSIS

### I.   Eleventh Amendment Immunity

Because DYFS is a state agency, some consideration must be given to whether the Eleventh Amendment to the United States Constitution immunizes DYFS and Defendants Stagg and Sabreen (in their official capacities) from Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985.  Because Defendants themselves invoked this Court's jurisdiction by removing this action from state court to federal court (docket #1), the Eleventh Amendment does not immunize any of the Defendants.  In Lapides v. Board of Regents, 535 U.S. 613, 618-19 (2002), the United States Supreme Court held that a state's removal of a lawsuit to federal court constitutes a waiver of Eleventh Amendment immunity.  "It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the Judicial power of the United States

9

extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the Judicial power of the United States extends to the case at hand." Id. at 619 (internal quotation marks omitted). See also Fidtler v. PA Dep't of Corrections, 55 Fed.Appx. 33 (3d Cir. 2002) (same). Indeed, for well more than a century, American jurisprudence has recognized that a state's voluntary appearance in federal court amounts to a waiver of its Eleventh Amendment immunity. Clark v. Barnard, 108 U.S. 436, 447 (1883).

Nor does the Eleventh Amendment bar Plaintiff's claims under the New Jersey Law Against Discrimination ("NJLAD"). In Garcia v. The Richard Stockton College of New Jersey, 210 F.Supp.2d 545, 547-48 (D.N.J. 2002), the United States District Court for the District of New Jersey looked to the language of NJLAD and determined that the New Jersey legislature had not opened itself up to private suits in federal court under NJLAD. Id. at 550. "Although the NJLAD clearly identifies the State as a potential defendant ... and authorizes private suits 'in Superior Court' ... it makes no mention of federal court." Id. (internal citations omitted); N.J.S.A. §§ 10:5-5(e) and 10:5-13. Thus, Garcia simply stands for the proposition that NJLAD, while waiving New Jersey's immunity to suits brought under the statute in state court, does not waive immunity for suits originating in federal court. That is not the situation presented in the case at bar. To the contrary, Defendants invoked the jurisdiction of this Court by removing Plaintiff's case from state court (where the State is a proper defendant under NJLAD) to federal court. The act of removing Plaintiff's lawsuit constitutes a waiver of Defendants' Eleventh Amendment immunity. See Lapides v. Board of Regents, 535 U.S. at 618-19.

**II.      The Viability of Plaintiff's Claims Under 42 U.S.C. §§ 1983 and 1985(3)**

As a preliminary matter, this Court will also consider whether Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985(3) are viable or whether Plaintiff's sole remedy would have been to bring her claims under 42 U.S.C. § 2000e, et seq. ("Title VII").  In relevant part, Title VII prohibits employers from discriminating against any individual regarding her compensation, or the terms, conditions or privileges of her employment on the basis of the individual's race, color, religion, sex or national origin.  42 U.S.C. § 2000e-1 (a) (1).  Likewise, it is illegal to retaliate against an individual because she has opposed an employment practice made unlawful under Title VII.  42 U.S.C. § 2000e-3 (a).  These are precisely the type of claims Plaintiff brings in the case at bar.

Title VII is a comprehensive statute that at least one Circuit has determined provides the exclusive remedy for violations of its own terms.  Jackson v. City of Atlanta, 73 F.3d 60, 63 (5th Cir. 1996), cert. denied, 519 U.S. 818 (1996).  In this Circuit, however, the analysis is slightly different.  In Bradley v. Pittsburgh Board of Education, 913 F.2d 1064 (3d Cir. 1990), the Third Circuit considered an appeal from the district court's ruling that plaintiff failed to state a claim under 42 U.S.C. § 1983 because all of the conduct he alleged to be racially discriminatory under § 1983 was within the scope of Title VII and therefore, the remedial scheme in Title VII provided the exclusive remedy for plaintiff's claims.  Id. at 1078-79.

The Third Circuit rejected the district court's analysis.  First, the Circuit Court noted that § 1983 does not confer any substantive rights but does serve as a vehicle for vindicating rights secured by the U. S. Constitution or federal law.  Id. at 1079.  Even though plaintiff failed to identify the substantive basis for his § 1983 employment discrimination claim, the Third Circuit

11

determined that the claim "must be grounded on the equal protection clause of the Fourteenth

Amendment." Id.  Thus, the same underlying conduct that stated a Title VII claim also stated an

equal protection claim that could be addressed via a § 1983 suit.

Next, the Court determined that the district court grounded its dismissal of plaintiff's race

discrimination claims on an erroneous basis: "We have previously held that the comprehensive

scheme provided in Title VII does not preempt section 1983, and that discrimination claims may

be brought under either statute, or both." Id.  Thus, in the case at bar, Plaintiff's §§ 1983 and

1985 claims are not subject to dismissal on the basis that Title VII provides the exclusive remedy

for the wrongs Plaintiff alleges.


## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the moving party establishes that "there is no

genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."

FED. R. CIV. P. 56(c).  See Abramson v. William Patterson Coll. of N.J., 260 F.3d 265, 276 (3d

Cir. 2001).

Federal Rule of Civil Procedure 56(c) provides, in relevant part:

> [t]he judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> a judgment as a matter of law.

A factual dispute between the parties will not defeat a motion for summary judgment unless it is

both genuine and material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986);

Kreschollek v. Southern Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000).  A factual dispute is

12

genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under

the substantive law, it would affect the outcome of the suit.  See Anderson, 477 U.S. at 248.  The

moving party "cannot simply reallege factually unsupported allegations contained in his

pleadings."  Clark v. Clabaugh, 20 F.3d 1290, 1294 (3d Cir. 1994).  The moving party must show

that if the evidentiary material of record were reduced to admissible evidence in court, it would

be insufficient to permit the non-moving party to carry its burden of proof.  See Celotex v.

Catrett, 477 U.S. 317, 318 (1986); Blackburn v. United Parcel Serv., Inc., 179 F.3d 81 (3d Cir.

1999).

Once the moving party has carried its burden under Rule 56, "its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts in question."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing

party must set forth specific facts showing a genuine issue for trial and may not rest upon the

mere allegations or denials of its pleadings.  See Sound Ship Bldg. Co. v. Bethlehem Steel Co.,

533 F.2d 96, 99 (3d Cir. 1976), cert. denied, 429 U.S. 860 (1976).  At the summary judgment

stage, the court's function is not to weigh the evidence and determine the truth of the matter, but

rather to determine whether there is a genuine issue for trial.  See Anderson, 477 U.S. at 249.  In

doing so, the court must construe the facts and inferences in the light most favorable to the non-

moving party.  See Wahl v. Rexnord Inc., 624 F.2d 1169, 1181 (3d Cir. 1980); Boyle v.

Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998).  The court must award summary judgment on

all claims unless the non-moving party shows through affidavits or admissible evidence that an

issue of material fact remains.  See, e.g., Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F.

Supp. 2d 324, 330 (D.N.J. 2002).

**LEGAL ANALYSIS**

**I.      Employment Discrimination: Disparate Treatment Claims**

All disparate treatment[6] claims for employment discrimination under federal law are analyzed by application of the McDonnell Douglas test:

> The Court in *McDonnell Douglas* set forth a burden-shifting scheme for discriminatory-treatment cases.  Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual.  The Courts of Appeals have consistently utilized this burden-shifting approach when reviewing motions for summary judgment in disparate-treatment cases.

Raytheon Co. v. Hernandez, 540 U.S. 44, 50 (2003) (citations omitted).  Moreover, the New Jersey Supreme Court has adopted the McDonnell Douglas test for claims under all state proscriptions against discrimination, both statutory and constitutional.  Peper v. Princeton University Board of Trustees, 77 N.J. 55, 83 (1978) (recommending use of the McDonnell Douglas test for all "actions brought under the Law Against Discrimination or any other State proscription against discrimination").

---

[6]A disparate treatment case is one in which "[t]he employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin."  Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977).

### A.      The Discrimination Claim

In their renewed motion for summary judgment, Defendants rely solely on the argument that Plaintiff has failed to state <u>prima facie</u> claims for discrimination and retaliation.  In order to state a <u>prima facie</u> claim with respect to discrimination, Plaintiff must establish that: (1) she is a member of a protected class; (2) she applied for promotional opportunities offered by Defendants and for which she was qualified; (3) she did not receive the promotion; and (4) there were circumstances giving rise to an inference of unlawful discrimination.  <u>See</u>, <u>e.g.</u>, <u>Pivirotto v. Innovative Systems, Inc.</u>, 191 F.3d 344, 352-57 (3d Cir. 1999).  "The burden of establishing a prima facie case of disparate treatment is not onerous."  <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).  This Court finds that Plaintiff meets all four prongs of this test with respect to the positions identified above as (b), (c), (d), (f), (g) and (j).

Defendants argue that Plaintiff must establish that a person outside Plaintiff's protected class was hired for the positions for which Plaintiff applied but was not hired.  This Court rejects that argument.  It is well-established in this Circuit that "a plaintiff need not prove, as part of her <u>prima facie</u> case, that she was replaced by someone outside of the relevant class."  <u>Pivirotto</u>, 191 F.3d at 353.  This is because the employer may have been motivated by race in taking adverse action against a plaintiff, despite the fact that it replaced, retained, or hired another member of the plaintiff's protected class.  <u>Id.</u> at 352-57.  For example, if an employer declines to promote African Americans who act in a particular manner (<u>e.g.</u>, assertively, non-assertively, "white," or "black") but does not require white employees to act in any particular way, such a double standard would be discriminatory, despite the fact that the employer promoted an African American into a position sought by an African American who did not conform.  <u>See id.</u> at 354.

15

The next question is whether Defendants can articulate a legitimate, non-discriminatory reason for their failure to promote Plaintiff. Raytheon Co. v. Hernandez, 540 U.S. at 50. According to Defendants, they rejected Plaintiff's applications because others, who were more qualified, were selected.  The Court finds that Defendants met their burden and the burden now shifts back to Plaintiff to demonstrate pretext. Id.  The Court finds that Plaintiff has presented sufficient evidence of pretext to go forward.  She offered evidence that she was not promoted in fifteen years despite earning a Masters Degree in Social Work and attaining a number one ranking on DYFS' standardized test.  She made several of her supervisors aware of reasons that may amount to "extreme personal hardship" under DYFS' reassignment policy.  She identified at least one other employee whose need to attend to family responsibilities was accommodated. Defendants are not entitled to summary judgment on Plaintiff's discrimination claim with respect to the positions for which she was apparently qualified.

### B.        The Retaliation Claim

In order to state a prima facie case with respect to her retaliation claim, Plaintiff must establish that: (1) she engaged in protected activity known to the retaliator; (2) she suffered an adverse action; and (3) there was a causal connection between the protected activity and the retaliation.  Jamison v. Rockaway Tp. Bd. of Educ., 242 N.J.Super. 436, 447 (App. Div. 1990). Plaintiff has clearly articulated the claim that she was denied promotional opportunities in retaliation for her complaints of racism.  It is uncontroverted that Defendants Stagg and Sabreen were aware of the complaints and grievances Plaintiff filed.  Further, Plaintiff presented evidence that Defendant Stagg acknowledged she would retaliate against employees who complained of

discriminatory treatment. Although Defendants characterize this evidence as "hearsay,"

Defendant Stagg admitted under oath in her deposition that she would not be likely to promote

people who circumvented her or went outside the office to make her look bad or like her decision

making was poor.  The only promotional opportunity for which Plaintiff was qualified during

Defendant Stagg's tenure at DYFS is identified by letter (j).  Defendant Stagg, therefore, is not

entitled to summary judgment with respect to that position.

      Defendants DYFS and Sabreen are not entitled to summary judgment on Plaintiff's

retaliation claim with respect to any of the positions for which she was apparently qualified.

Plaintiff presented evidence that Defendant Sabreen may have been instrumental in denying her

opportunities for advancement – and that such denials may have been retaliatory in nature, as he

allegedly told her, "We got you now."

## II.    Plaintiff's Claims Against DYFS and Defendants Stagg and Sabreen in Their Official Capacities Under 42 U.S.C. § 1983

      DYFS and the individual Defendants acting in their official capacities are not "persons"

as defined in 42 U.S.C. § 1983.  In relevant part, that statute provides:

> Every person who, under color of [law] subjects, or causes to be
> subjected, any ... person within the jurisdiction [of the United
> States] to the depravation of any rights ... secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law [or] suit in equity ....

In Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), the United States Supreme Court

squarely faced the issue of whether the State, or an official of the State while acting in his official

capacity, is a "person" under § 1983.  Id. at 60, 63-64.  There, the plaintiff was a Michigan state

employee who brought suit in state court alleging that the Department of State Police and

Director of State Police in his official capacity failed to promote him for an improper reason.  Id.

at 60.  The plaintiff brought his action in Michigan state court, where Eleventh Amendment

immunity does not apply.  Id. at 63-64; Maine v. Thiboutot, 448 U.S. 1, 9, n.7 (1980).  Thus, the

question of whether the State actors were "persons" under 42 U.S.C. § 1983 was directly at issue.

491 U.S. at 63-64.

The United States Supreme Court first applied the basic understanding that, "in common

usage, the term 'person' does not include the sovereign, and statutes employing the word

[person] are ordinarily construed to exclude [the sovereign]."  Id. at 64 (some internal

punctuation omitted).  Moreover, where Congress chooses "to alter the usual constitutional

balance between the States and the Federal Government, it must make its intention to do so

unmistakably clear in the language of the statute."  Id. at 65 (internal punctuation and citations

omitted).  For these and other reasons, the Supreme Court held that "neither a State nor its

officials acting in their official capacities are 'persons' under § 1983."  Id. at 71.  Accordingly,

Defendant DYFS is entitled to dismissal of Plaintiff's § 1983 claims and Defendants Stagg and

Sabreen are entitled to dismissal of these claims to the extent they were sued in their official

capacities.[7]

---

[7]A suit against an individual in his official capacity is treated as a suit against the State.

18

**III.    Plaintiff's Claims Against DYFS and Defendants Stagg and Sabreen**
**        in Their Official Capacities Under 42 U.S.C. § 1985(3)**

The Court must now consider whether the definition of "person" under 42 U.S.C. § 1985(3) is the same as under § 1983.  This question has not been directly addressed in the District of New Jersey.  Courts in several other jurisdictions, however, have ruled on this question.  This Court agrees that the best-reasoned approach applies the same definition of "person" under both statutes.  The following is a survey of cases in which the court either assumed or actually determined that the definition of "person" under § 1985(3) is the same as that under § 1983:  Davis v. Norris, 198 F.3d 249 (8th Cir. 1999) (affirming lower court's dismissal of action because State of Missouri and its agencies are not "persons" under either § 1983 or § 1985); Dye v. U.S., 516 F.Supp.2d 61, 71 (D.D.C. 2007) (determining that both statutes are directed to "persons," not "governments," albeit in case involving the federal government as defendant); Gollump v. Spitzer, 2007 WL 433361, *4 (N.D.N.Y. 2007) (finding that states, their agencies, officers, and employees are not persons under § 1985(3) when acting in their official capacities); Noesen v. Medical Staffing Network, Inc., 2006 WL 1529664, *5 (W.D. Wis. 2006), aff'd, 232 Fed.Appx. 581 (7th Cir. 2007) (finding that the State of Wisconsin is not a "person" who can be sued under either §§ 1983 or 1985(3)); Vaizburd v U.S., 90 F. Supp.2d 210, 216 (E.D.N.Y. 2000) (finding that term "person" has same meaning under both statutes); DiBartolo v. City of Philadelphia, 2000 WL 217746, *5 (E.D. Pa. 2000) (same); Wichard v. Cheltenham Tp., 1995 WL 734106, *2 (E.D. Pa. 1995) (same); Penaranda v. Cato, 740 F.Supp. 1578, 1582 (S.D. Ga. 1990) (finding that a state entity is not a "person" under either statute); Santiago v. N.Y. State Dep't of Corr. Servs., 725 F.Supp. 780, 783 (S.D.N.Y. 1989),

19

rev'd on other grounds, 945 F.2d 25 (2d Cir. 1991) (same); Rode v. Dellarciprete, 617 F.Supp.

721, 723 (M.D. Pa. 1985) (same); Harris v. Comm. of Pa., 419 F.Supp. 10, 14 (M.D. Pa. 1976)

(same).

As Judge Orlorsky observed in Garcia v. The Richard Stockton College of New Jersey,

210 F.Supp.2d 545 (D.N.J. 2002), § 1985(3) makes a conspiracy between two or more persons

unlawful but allows a person injured by such a conspiracy to sue any conspirator.  210 F.Supp.2d

at 550 n.3.  It is arguable, then, that a non-person co-conspirator could face liability under §

1985(3), as long as the conspiracy also involved two persons.  Id.  This twist does not come into

play in the case at bar because neither DYFS nor Defendants Stagg and Sabreen in their official

capacities are "persons" under § 1985(3).  Thus, there cannot be any conspiracy involving two or

more persons to which one of the non-person Defendants could attach itself.

For the above and foregoing reasons, the § 1985(3) claims brought against DYFS and

Defendants Stagg and Sabreen in their official capacities must be dismissed.


**IV.     Plaintiff's  42 U.S.C. §§ 1983 and 1985 Claims Against
          Defendants Stagg and Sabreen in their Individual Capacities**

The United States Supreme Court has held that state officials, sued in their individual

capacities, are "persons" under 42 U.S.C. § 1983.  Hafer v. Melo, 502 U.S. 21, 31 (1991).

> Personal-capacity suits ... seek to impose individual liability upon a
> government officer for actions taken under color of state law.
> Thus, on the merits, to establish *personal* liability in a § 1983
> action, it is enough to show that the official, acting under color of
> state law, caused the deprivation of a federal right.

Id. at 24 (internal punctuation and citation omitted).  Thus, Plaintiff has stated viable claims

against Defendants Stagg and Sabreen in their individual capacities.

**V.**   **Plaintiff's Claims Under New Jersey's Law Against Discrimination**

Defendants are not entitled to summary judgment on Plaintiff's NJLAD claims for the same reasons outlined above with respect to Plaintiff's other claims.  Viewing the evidence in a light most favorable to Plaintiff, as the Court must at this stage, Plaintiff has established her qualifications for positions (b), (c), (d), (f), (g), and (j).  See Pilkington v. Bally's Park Place, Inc., 180 N.J. 262, 263 (2004).  Further, Plaintiff has raised  genuine issues of material fact regarding whether the failure to promote her was based upon racial discrimination and/or in retaliation for her complaints of racial discrimination.  Bray v. Marriott Hotels, 110 F.3d 986, 990-91 (3d Cir. 1997) (finding genuine issue of material fact as to whether employer's asserted nondiscriminatory reason for failing to promote was a pretext for race discrimination).

**CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment is granted in part and denied in part.  The motion is denied as to Plaintiff's 42 U.S.C. §§ 1983 and 1985(3) claims brought against Defendant Sabreen in his personal capacity for the promotional positions identified by letters (b), (c), (d), (f), (g), and (j) above.  The motion is also denied as to Plaintiff's 42 U.S.C. §§ 1983 and 1985(3) claim brought against Defendant Stagg in her personal capacity as to the promotional opportunity identified by letter (j).  Further, the motion is denied as to Plaintiff's claims against all Defendants brought under the New Jersey Law Against Discrimination for these same positions.  The motion for summary judgment is granted in all

other respects.  An appropriate Order accompanies this Opinion.


       s/ Stanley R. Chesler                 
STANLEY R. CHESLER, U.S.D.J.


Dated: February 15, 2008